## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EARL DAVIS**                                         **CIVIL ACTION**

**VERSUS**                                            **NO.  10-1213**

**BURL CAIN, WARDEN**                        **SECTION "I"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

I.     **Factual Background**

The petitioner, Earl Davis ("Davis"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On August 21, 2003, Davis and two co-defendants, Joseph Johnson and Shacira L. Marshall, were indicted by a Grand Jury in Jefferson Parish with the second

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

degree murder of Michael Pierre and conspiracy to commit armed robbery of Michael Pierre.[3]  On July 1, 2004, the State entered a nolle prosequi as to Marshall.[4]  Johnson would later enter a plea of guilty to the amended charge of manslaughter and to conspiracy to commit armed robbery, and he was sentenced to serve 25 years on each count to run concurrently.[5]

The record reflects that on June 24, 2003, Craig Pierre found his brother Michael Pierre dead of gunshot wounds in his apartment on Holmes Boulevard in Gretna, Louisiana.[6]  Pierre had been shot once in the left side of his neck, and three times in the right side of his head.

Michael Pierre had been with his brother Craig until approximately 11:30 a.m. that day. Sometime before noon, Craig's wife received a phone call from her brother, Hazel Harris, who was Michael Pierre's roommate.  Harris told her that he received a call from his ex-girlfriend that someone heard shots in the apartment.  He told her to have Craig check on Michael.  They all lived in the same apartment complex.  When Craig went to the apartment, he received no answer when he knocked on the door.  He did not pursue the matter and went home.  Around 4:00 or 5:00 p.m., Craig again was told by a neighbor to check on his brother.  When he peeked through the window of the apartment, he saw the victim sitting in a puddle of blood.

Jefferson Parish Sheriff's Deputy Donald Meunier investigated the crime.  Two witnesses placed Davis at the complex on the morning of the shooting.  As a result, he took statements from

---

[3]St. Rec. Vol. 1 of 9, Indictment, 8/21/03.

[4]*Id*. (handwritten notation dated 7/1/04).

[5]St. Rec. Vol. 1 of 9, Plea Minutes (Johnson), 6/30/04; Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty under *North Carolina v. Alford*, 6/30/04.

[6]The facts of the case were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal issued on direct appeal.  *State v. Davis*, 947 So.2d 48, 50-55 (La. App. 5th Cir. 2006); St. Rec. Vol. 2 of 9, 5th Cir. Opinion, 06-KA-402, 11/28/06.

the next door neighbor, Shacira Marshall, her friend Joseph Johnson, and Davis.  Based on the witness statements and the statements taken from Marshall, Johnson, and Davis, the three were arrested and charged with the crime.  According to Detective Meunier, no physical evidence was recovered linking Davis, Marshall, or Johnson to the scene of the murder.

Marshall lived next door to Michael, and the apartments shared an adjoining wall.  Marshall told the detective that she was in her apartment and heard what could have been gunshots or cabinets slamming, but failed to contact the police.  Instead, she called Lakesha Dupre, a former resident, and Harris's ex-girlfriend, although Dupre had moved out weeks earlier.  Marshall also told the detective that she came into contact with Joseph Johnson at 10:57 a.m., a very specific time which the detective found to be unusual.

The detective found the statement particularly suspicious when Johnson gave the same exact time in his statement which was taken several hours later.  Johnson gave the police four taped statements.  The first two were similar to Marshall's statement.  Marshall and Johnson provided alibis for each other.  They each claimed they were in Marshall's apartment at the time of the gunshots and that they left there together.

In Johnson's third and fourth statements, he did not implicate himself as a participant in the murder, but gave significant details suggesting that he was inside the apartment.  Johnson accused Rodney Royal of being the killer.  Johnson did not mention Davis in any of his statements.  After Detective Meunier spoke with Davis, Johnson was interviewed again and admitted that he falsely accused Rodney Royal.

After having received information that Davis was at the complex that day, the detective sought him as a potential witness.  When asked to account for his whereabouts on the day of the

incident, Davis gave an account which did not include his presence at the complex when witnesses had suggested otherwise.  He stated that he woke up at his girlfriend Diamond Guidry's house around 10:30 a.m., and called his friend Bolo.   He claimed that he did not leave Guidry's house until 6:15 p.m.  At that time, he went to Holmes Boulevard where the complex was located, and learned that Michael had been shot and killed.  While there, he also talked to Marshall, who told him she heard "cabinets slamming."  Davis denied having contact with either Marshall or Johnson earlier in the morning.  This inconsistency with the other witness statements raised "red flags," and Davis was advised of his rights.

Davis thereafter gave three additional taped statements which were played at trial, and the transcriptions of the statements were published to the jury.  In his next taped statement, Davis implicated himself in the events leading to the murder.  He said he arrived at Holmes Boulevard on the date of the accident and saw someone named Gilbert.  According to Davis, Johnson called to him to come up and "handle some business."  Johnson said he wanted to go to Michael's apartment to borrow some money.  While they were inside Marshall's apartment, Davis said that he heard Johnson tell Marshall to telephone Michael's apartment to make sure no one was there.  Knowing the purpose of making the call, Marshall called "Keisha," who "stayed" in that apartment.  When Marshall found out that Keisha was not in the apartment, Johnson told Marshall to act as a lookout to make sure nobody came and if someone did to "holler or something."  They then went to Michael's apartment, and he answered the door.  He let them in and told them to close the door because he did not want anybody else there.  Davis locked the deadbolt.  Johnson pulled out a gun and pointed it at Michael asking him "where it's at."  Johnson also told Davis to go upstairs and "look."  Davis said that he searched for money, dope, and "whatever."  After looking through

4

furniture drawers and underneath the mattress, Davis returned downstairs.  As he reached the bottom of the stairs, he heard three shots. Davis said that Michael was shot first in the head, spinning him to the left.  He then fell to the ground in the kitchen.  Davis stated that he saw Michael on his knees with his hands up in the air begging for his life, and he slumped down after the other shots were fired.  After the shooting, Davis unlocked the apartment door, opened it, and ran into Marshall's apartment.  Johnson was behind him.  Davis claimed that Johnson told Marshall he shot Michael, because Michael saw Johnson's face.  Approximately five minutes later, the three left the premises in Davis's car.  Davis drove Marshall and Johnson to his "Auntee's house," dropped them off, and left.  According to Davis, he returned to the scene of the crime at 6:30 p.m., and the police were already there.

Davis denied getting anything from Michael's apartment.  He identified Johnson in a photographic lineup as the shooter.  Davis claimed he did not know Johnson's purpose in going to the victim's apartment, and did not know Johnson was armed until after the door was locked.  He also said he knew Johnson was going into the apartment to borrow some money, but instead, Johnson ended up robbing the victim.

By the time Davis made his third taped statement, he had been arrested.  In that statement, he admitted that he lied about the reason he went with Johnson to Michael's apartment.  Davis said he lied, because he went there to get some money, dope or "whatever," and he hoped to get loaded.  In his fourth statement, Davis clarified his previous statement, and said that only he, Michael, and Johnson were in the apartment when Michael was killed.

Davis was tried before a jury on May 11, 12, and 13, 2004, and was found guilty as charged of second degree murder and conspiracy to commit armed robbery.[7]  At a hearing held on June 16, 2004, the Trial Court denied Davis's motion for a new trial based on the improper admission of hearsay at trial.[8]  On June 28, 2004, the Trial Court sentenced Davis to serve life in prison without benefit of parole, probation, or suspension of sentence for second degree murder, and to serve a concurrent 49 years and six months in prison for conspiracy to commit armed robbery.[9]

On direct appeal, Davis's appointed counsel argued that the Trial Court erred in denying the motion for new trial based on the hearsay testimony admitted at trial.[10]  On November 28, 2006, the Louisiana Fifth Circuit affirmed the convictions and sentences finding no merit in the claim raised.[11]

Davis timely[12] submitted a writ application to the Louisiana Supreme Court,  which was denied without stated reasons on September 14, 2007.[13]  Davis's conviction became final 90 days later, on December 13, 2007, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari

---

[7]St. Rec. Vol. 1 of 9, Trial Minutes, 5/11/04; Trial Minutes, 5/12/04; Trial Minutes, 5/13/04; St. Rec. Vol. 1 of 9, Jury Verdict (Counts 1 and 2), 5/13/04; St. Rec. Vol. 5 of 9, Trial Transcript, 5/11/04; Trial Transcript, 5/12/04; St. Rec. Vol. 6 of 9, Trial Transcript (continued), 5/12/04; St. Rec. Vol. 7 of 9, Trial Transcript, 5/13/04.

[8]St. Rec. Vol. 1 of 9, Minute Entry, 6/16/04; Motion for New Trial, 6/16/04; St. Rec. Vol. 7 of 9, Motion Hearing Transcript, 6/16/09.

[9]St. Rec. Vol. 1 of 9, Sentencing Minutes, 6/28/04; St. Rec. Vol. 7 of 9, Sentencing Transcript, 6/28/04.

[10]St. Rec. Vol. 7 of 9, Appeal Brief, 2006-KA-0402, 7/7/06.

[11]*State v. Davis*, 947 So.2d at 48; St. Rec. Vol. 2 of 9, 5th Cir. Opinion, 06-KA-402, 11/28/06.

[12]La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment or from the denial of a timely application for rehearing.  Although he did not date the pleading, the record indicates that the application was postmarked on December 13, 2006.  This was within the allowable time.  St. Rec. Vol. 8 of 9, La. S. Ct. Writ Application, 07-KO-0003, 1/4/07 (postmarked 12/13/06); St. Rec. Vol. 4 of 9, La. S. Ct. Letter, 2007-KO-3, 1/4/07 (showing postmark 12/13/06).

[13]*State v. Davis*, 963 So.2d 996 (La. 2007); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2007-KO-0003, 9/14/07.

with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    Procedural History

On September 24, 2007, Davis submitted a motion to the Trial Court requesting copies of certain documents from the district attorney's files.[14]  The court denied the motion on October 16, 2007, instructing Davis to pursue the records from the district attorney's office.[15] Both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied relief on review of that order, directing Davis to pursue the request through the district attorney's office.[16]

In the meantime, on May 28, 2008, Davis submitted to the Trial Court an application for post-conviction relief in which he raised ineffective assistance of counsel on seven grounds:[17] (1) trial counsel failed to obtain an expert to testify at trial; (2) trial counsel failed to ensure that the jury was properly instructed; (3) trial counsel failed to argue that the indictment was invalid and violated double jeopardy; (4) trial counsel failed to argue that the evidence at trial was insufficient to prove the crimes charged: (5) trial and appellate counsel failed to argue prosecutorial misconduct; (6) trial and appellate counsel failed to challenge inadmissible hearsay allowed at trial; and (7) appellate counsel failed to argue or raise patent/plain error and other objections raised at trial and preserved for appeal.

---

[14]St. Rec. Vol. 1 of 9, Motion for Production of Documents, 10/10/07 (dated 9/24/07).

[15]St. Rec. Vol. 1 of 9, Trial Court Order, 10/16/07.

[16]*State ex rel. Davis v. State*, 992 So.2d 1027 (La. 2008); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2008-KH-0239, 10/24/08; 5th Cir. Order, 07-KH-903, 12/13/07; La. S. Ct. Writ Application, 08-KH-0239, 1/31/08 (postal metered 1/10/08); St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2008-KH-239, 1/31/08 (showing postal meter1/10/08).

[17]St. Rec. Vol. 2 of 9, Uniform Application for Post-Conviction Relief, 6/2/08 (dated 5/28/08).

The Trial Court denied relief on August 20, 2008, finding that Davis's first, second, fourth, and fifth claims were without merit.[18]  The Court also found that his third claim could have been raised on direct appeal and was therefore barred from review under La. Code Crim. P. art. 930.4(B) and (C), and was otherwise without merit.[19]  The Court also barred review of his sixth and seventh claim pursuant to La. Code Crim. P. art. 930.4(A), finding that the underlying argument had been resolved on direct appeal, and the claims were otherwise without merit.

On March 6, 2009, the Louisiana Fifth Circuit denied relief on Davis's subsequent writ application to that Court.[20]  The Court held that Davis's first, second, and fifth claims were without merit.  The Court further found that the third and fourth claims were barred from review pursuant to La. Code Crim. P. art. 930.4(C) and were otherwise merit.  Similarly, the Court held that Davis's sixth and seventh claims were barred from further review under La. Code Crim. P. art. 930.4(A), having already been addressed on appeal.[21]

The record indicates that, on April 3, 2009,[22] Davis submitted a "letter" of an unknown nature to the Louisiana Supreme Court which was returned to him "unfiled."[23]  He was advised by

---

[18]St. Rec. Vol. 2 of 9, Trial Court Order, 8/20/08.

[19]Art. 930.4(B) provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."  Also, under Art. 930.4(C), "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

[20]St. Rec. Vol. 9 of 9, 5th Cir. Order, 08-KH-774, 3/6/09; 5th Cir. Writ Application, 08-KH-774, 9/22/08 (postmarked 9/17/08, dated 9/16/08).

[21]Article 930.4(A) provides that "[u]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered."

[22]Davis submits an inmate mail request dated April 3, 2009, although the Central Staff letter referenced it as a letter of April 6, 2009.  Rec. Doc. No. 9, p. 5.

[23]St. Rec. Vol. 8 of 9, Letter from Central Staff, 4/9/09.

the Central Staff at the Louisiana Supreme Court that his "papers" were not in a procedurally proper

form for the Court to consider and, therefore, they were not filed.[24]

In reply to his follow up letter dated April 14, 2009,[25] Central Staff again returned his papers

to him "unfiled."[26]  He again was advised that his "papers" were not in a procedurally proper form

for the Court to consider and they were not filed for that reason.[27]

Thereafter, on April 24, 2008,[28] Davis submitted for mailing an untimely[29] writ application

to the Louisiana Supreme Court seeking review of his post-conviction claims.[30]  The Court denied

the application without stated reasons on August 12, 2009.[31]

## III.    The Federal Petition

On June 17, 2010, the clerk of this Court filed Davis's petition for federal habeas corpus

relief, in which he raised seven grounds of ineffective assistance of counsel:[32] (1) trial counsel failed

to obtain an expert to testify at trial; (2) trial counsel failed to ensure that the jury was properly

---

[24]*Id.*

[25]St. Rec. Vol. 8 of 9, Letter to Clerk of La. S. Ct., dated 4/14/09.  Davis submitted an inmate mail request dated April 15, 2009, although the Central Staff letter referenced it as an April 14, 2009.  Rec. Doc. No. 9, p. 8.

[26]St. Rec. Vol. 8 of 9, Letter from Central Staff, 4/20/09.

[27]*Id.*

[28]Rec. Doc. No. 9, p. 10.

[29]As noted above, La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment, as considered with the applicable mailbox rule.  As will be discussed later in this report, Davis's application was not submitted or filed within that period.

[30]St. Rec. Vol. 8 of 9, La. S. Ct. Writ Application, 09-KH-1053, 5/12/09; La. S. Ct. Letter, 2009-KH-1053, 5/12/09 (showing postal meter 4/27/09).

[31]*State ex rel. Davis v. State*, 28 So.3d 1007 (La. 2010); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2009-KH-1053, 3/5/10.

[32]Rec. Doc. No. 3.

instructed; (3) trial counsel failed to argue that the indictment was invalid and violated double jeopardy; (4) trial counsel failed to argue that the evidence at trial was insufficient to prove the crimes charged: (5) trial and appellate counsel failed to argue prosecutorial misconduct; (6) trial and appellate counsel failed to challenge the inadmissible hearsay allowed at trial; and (7) appellate counsel failed to argue or raise patent/plain error and other objections raised at trial and preserved for appeal.

The State filed a response in opposition to Davis's petition alleging that the petition was not timely filed and that two of the claims are in procedural default.[33]  In his traverse to the State's opposition response, Davis argued that he properly presented his pleadings to the Louisiana Supreme Court and they erred in returning them to him.  He contends that he should be given the benefit of his original mailing date of April 3, 2009, which would render his state and federal pleadings timely filed.  He further suggests that his efforts to file his documents in spite of their erroneous return to him should be considered under the doctrine of equitable tolling.

## IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[34] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on April 22, 2010.[35]  The threshold questions in habeas review under the amended

---

[33]Rec. Doc. No. 8.

[34]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[35]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State alleges *inter alia* that Davis's petition is not timely filed.  The Court agrees with the State's conclusion for the following reasons.

## V.       Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[36]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As discussed above,

---

for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Davis's petition on June 17, 2010, when he paid the filing fee.  Davis's signature on the petition is dated April 22, 2010.  This is the earliest date on which he could have submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[36]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.       the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.       the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.       the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.       the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

11

Davis's conviction became final on December 13, 2007, which was 90-days after the Louisiana Supreme Court denied his writ application after direct appeal.

Under the plain language of § 2244, Davis had until Monday, December 15, 2008,[37] to file a timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application of the statute would bar Davis's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2) (2006).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is

---

[37]The one year would have ended on Saturday, December 13, 2008, and therefore fell to the following business day, Monday, December 15, 2008.

unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 122 (2002) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

Furthermore, requests for documents and transcript copies, like those filed by petitioner, in the state courts are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in

receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In this case, the AEDPA's one-year filing period began to run on December 14, 2007, the day after Davis's conviction was final.  The period ran 166 days until May 28, 2008, when Davis submitted his application for post-conviction relief to the Trial Court.  The application remained pending until Monday, April 6, 2009, which was 30 days[38] after the Louisiana Fifth Circuit denied his related writ application.  Davis thereafter did not properly file for timely review in the Louisiana Supreme Court.  The filing period therefore began to run again on April 7, 2009, and did so uninterrupted for the remaining 199 days, until Wednesday, October 22, 2009,[39] when it expired. This was six months before Davis submitted his federal petition for filing in this Court.

For the reasons cited above, none of Davis's misplaced efforts to obtain copies of documents provided him with tolling benefits, as those requests did not constitute state post-conviction or other collateral review.

The Court also is aware that Davis submitted a "letter" dated "April 6, 2009," to the Louisiana Supreme Court.  The letter was returned "unfiled" to Davis by the Central Staff of that court, because it was not in a procedurally proper form.  Because the papers were never filed, they did not constitute a <u>properly filed</u> state application for post-conviction or other collateral review. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually

---

[38]The thirtieth day was Sunday April 5, 2009, so the deadline falls to the Monday under both federal and state law.

[39]The 144th day was Saturday, August 30, 2008, and the following Monday ,September 1, 2008, was Labor Day.  The deadline falls to the next business day, Tuesday September 2, 2008, under both state and federal law.

prescribe, for example, <u>the form of the document</u>, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." (emphasis added)).

Undeterred, rather than correct his error, Davis submitted a second deficient document to the Louisiana Supreme Court dated "April 14, 2009."   That document also was returned to him "unfiled" for the same reason; it was not in proper form.   The second letter also was not a properly filed state application for post-conviction or other collateral review for tolling purposes.  *Id*.  For these reasons, Davis is not entitled to tolling credit for either letter, neither of which were in proper form nor filed by the Louisiana Supreme Court.  *See Edwards v. Dretke*, 116 Fed. Appx. 470, 471 (5th Cir. Oct. 6, 2004) (document not properly filed when they are returned for non-compliance with court rules); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed).

Davis later submitted the untimely writ application to the Louisiana Supreme Court on April 24, 2009.[40]  As noted above, pursuant to La. S.Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment under review or from the denial of a timely filed application for rehearing.  *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).  In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing.  *See*, *Causey*, 450 F.3d at 601.

In this case, Davis's 2009 writ application was not timely submitted to the Louisiana Supreme Court before April 6, 2009, the period allowed under La. S. Ct. Rule X § 5.  Davis's mail receipt indicates that he submitted the proper pleading to prison officials for mailing to the Louisiana

---

[40]Rec. Doc. No. 9, p. 10.

Supreme Court on April 24, 2009.[41]   A writ application which fails to comply with La. S. Ct. Rule X § 5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines.  *Butler v. Cain*, 533 F.3d 314, 318-319 (2008).  Davis's 2009 Louisiana Supreme Court application did not interrupt or toll the AEDPA filing period which expired on Wednesday, October 22, 2009.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Davis suggests that he should be allowed equitable tolling for his efforts to get a writ application to the Louisiana Supreme Court, and that he should not be faulted for the pleadings having been returned by the Central Staff.  As discussed above, the documents were returned to him for failure to comply with that Court's filing requirements.  He has not shown that the return of the documents was in error or arbitrary.

He also failed to comply with the state court's requirements twice, even after receiving specific instructions on how to correct his improper pleadings.  This does not demonstrate diligence on his part.  Davis's failure to comply with the state court's filing requirements was within his

---

[41]*Id.*

control, and does not entitle him to the rare and extraordinary remedy of equitable tolling.[42]  *See*

*Edwards*, 116 Fed. Appx. at 471 (no equitable tolling where documents were returned for non-

compliance with rules); *Larry*, 361 F.3d at 897 (refusing to allow equitable tolling where petitioner's

own action led to improper filing, rather than any action taken by the state court).

Davis's federal petition is deemed filed on April 22, 2010, which is six months after the

AEDPA filing period expired on October 22, 2009.  Davis's federal petition must be dismissed as

untimely filed.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Earl Davis's petition for issuance

of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**

as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[42]Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 21st day of March, 2011.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.